Squire Patton Boggs (US) LLP
Adam R. Fox (State Bar # 220584)
adam.fox@squirepb.com
Marisol C. Mork (State Bar # 265170)
marisol.mork@squirepb.com
Hannah J. Makinde (State Bar # 307907)
hannah.makinde@squirepb.com
555 South Flower Street, 31st Floor
Los Angeles, California  90071
Telephone:  +1 213 624 2500
Facsimile:    +1 213 623 4581

Attorneys for Defendant
Dr. Travis Salway

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

REINTEGRATIVE THERAPY ASSOCIATION, INC., a California corporation, *et al.*,

Plaintiffs,

v.

DAVID J. KINITZ, an individual, *et al.*,

Defendants.

Case No. 21-cv-1297-BEN-BLM

**DEFENDANT DR. TRAVIS SALWAY'S SPECIAL MOTION TO STRIKE AND MOTION TO DISMISS THE COMPLAINT**

Judge:  Roger T. Benitez

Date:        November 29, 2021
Time:        10:30 a.m.
Dept:        5A
Date Action Filed:      July 20, 2021

*Squire Patton Boggs (US) LLP*
*555 South Flower Street, 31st Floor*
*Los Angeles, California 90071*

## NOTICE OF MOTION AND MOTION

## TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that, on November 29, 2021, at 10:30 a.m., or as soon thereafter as this matter may be heard before the Honorable Roger T. Benitez, United States District Judge, in Courtroom 5A of the above-entitled Court, located at 221 West Broadway, San Diego, California, 92101, Defendant Dr. Travis Salway will and hereby does move the Court for an order to strike the complaint against him, pursuant to California Code of Civil Procedure § 425.16, commonly known as the anti-SLAPP statute,[1] and to obtain an award of fees and costs for bringing the motion. *See* Cal. Code Civ. P. § 425.16(c)(1).

Dr. Salway also independently seeks dismissal of the complaint filed against him in this action, with prejudice, pursuant to the Federal Rules of Civil Procedure. Specifically, Rule 12(b)(2) warrants dismissal because the Court lacks personal jurisdiction over Dr. Salway. Plaintiffs even concede he is not a resident of the forum state and at all relevant times engaged in activities only abroad. Rules 8 and 12(b)(6) also authorize dismissal because the complaint fails to plead a cognizable claim.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all pleadings and documents on file with the Court, and upon such oral argument and other submissions that may be presented at or before the hearing on this Motion.

Dated:  October 14, 2021                    Squire Patton Boggs (US) LLP


By: */s/Adam Fox*
_____
                                    Adam R. Fox
Attorneys for Defendant
Dr. Travis Salway

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

---

[1] "SLAPP" is an acronym for the phrase, "Strategic Lawsuit Against Public Participation."

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................... 1

II.    STATEMENT OF FACTS ...................................................................... 2

III.   LEGAL STANDARDS ........................................................................... 4

IV.   ANTI-SLAPP MOTION TO STRIKE ................................................... 7

V.     MOTION TO DISMISS ........................................................................ 10

      A.     The Court Lacks Personal Jurisdiction Over Dr. Salway ................... 10

      B.     Plaintiffs Fail To State A Cognizable Claim Against
               Dr. Salway ....................................................................................... 13

VI.   CONCLUSION ..................................................................................... 16

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT TRAVIS SALWAY'S
MOTION TO DISMISS
21-CV-1297-BEN-BLM

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*AMA Multimedia, Ltd. Liab. Co. v. Wanat*,
    970 F.3d 1201 (9th Cir. 2020)...................................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................15

*Balistreri v. Pacifica Police Dep't*,
    901 F.2d 696 (9th Cir. 1988).......................................................................6

*Batzel v. Smith*,
    333 F.3d 1018 (9th Cir. 2003).......................................................................4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................6

*Brayton Purcell LLP v. Recordon & Recordon*,
    606 F.3d 1124 (9th Cir. 2010)....................................................................11

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) .............................................................................12

*Calder v. Jones*,
    465 U.S. 783 (1984) ....................................................................6, 11, 12

*Core-Vent Corp. v. Nobel Indus. AB*,
    11 F.3d 1482 (9th Cir. 1994).....................................................................12

*Critical Care Diagnostics, Inc. v. Am. Ass'n for Clinical Chemistry*,
    No. 13cv1308 L (MDD), 2014 U.S. Dist. LEXIS 20711
    (S.D. Cal. Feb. 18, 2014)......................................................................7, 9

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) .............................................................................15

*Dole Food Co. v. Watts*,
    303 F.3d 1104 (9th Cir. 2002).......................................................................6

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Fireman's Fund v. National Bank of Cooperatives*,
   103 F.3d 888 (9th Cir.1996) ................................................................................... 5

*Gertz v. Robert Welch*,
   418 U.S. 323 (1974) ............................................................................................... 9

*In re Gilead Scis., Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................... 6

*Goodyear Dunlop Tires Operations v. Brown*,
   564 U.S. 915 (2011) ..................................................................................... 5, 6, 10

*Harkonen v. Fleming*,
   880 F. Supp. 2d 1071 (N.D. Cal. 2012) ................................................................. 8

*Haynes v. Alfred A. Knopf, Inc.*,
   8 F.3d 1222 (7th Cir. 1993) ................................................................................. 13

*Hilton v. Hallmark Cards*,
   599 F.3d 894 (9th Cir. 2010) ............................................................................. 4, 5

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) ............................................................................................... 5

*Jinni Tech Ltd. v. Red.com, Inc.*,
   No. C17-0217JLR, 2020 U.S. Dist. LEXIS 156844, 2020 WL
   5095458 (W.D. Wa. Aug. 28, 2020), *vacated, in part, affirmed in
   part, and remanded by* 854 Fed. Appx. 171 (9th Cir. 2021) ............................ 10

*Makaeff v. Trump Univ., LLC*,
   715 F.3d 254 (9th Cir. 2013) ................................................................................. 4

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) ................................................................................. 6

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) ............................................................................. 15

*Mindys Cosmetics, Inc. v. Dakar*,
   611 F.3d 590 (9th Cir. 2010) ................................................................................. 4

*Natural-Immunogentics Corp. v. Newport Trial Group*,
   No. SACV 15-02034-JVS, 2019 U.S. Dist. LEXIS 70004
   (C.D. Cal. Feb. 28, 2019) ................................................................................... 10

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT TRAVIS SALWAY'S
MOTION TO DISMISS
21-CV-1297-BEN-BLM

*Navarro v. Block,*
    250 F.3d 729 (9th Cir. 2001) ................................................................ 6

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,*
    190 F.3d 963 (9th Cir. 1999) ................................................................ 4

*Omeluk v. Langsten Slip & Batbyggeri,*
    52 F.3d 267 (9th Cir. 1995) .................................................................. 5

*Papasan v. Allain,*
    478 U.S. 265 (1986) ............................................................................. 6

*Partington v. Bugliosi,*
    56 F.3d 1147 (9th Cir. 1995) .............................................................. 13

*Person's Co. v. Christman,*
    900 F.2d 1565 (Fed. Cir. 1990) .......................................................... 14

*Pippen v. NBC Universal Media, LLC,*
    734 F.3d 610 (7th Cir. 2013) .............................................................. 15

*Resolute Forest Prod., Inc. v. Greenpeace Int'l,*
    302 F. Supp. 3d 1005 (N.D. Cal. 2017) .......................................... 8, 15

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) .......................................................... 5, 12

*SDV/ACCI, Inc. v. AT&T Corp.,*
    522 F.3d 955 (9th Cir. 2008) .............................................................. 14

*Steckman v. Hart Brewing.*
    143 F.3d 1293, 1295–96 (9th Cir. 1998) .............................................. 6

**California Cases**

*Agarwal v. Johnson,*
    25 Cal. 3d 932 (1979) ........................................................................... 9

*Barrett v. Rosenthal,*
    40 Cal. 4th 33 (2006) ........................................................................... 7

*Bartholomew v. YouTube, LLC,*
    17 Cal. App. 5th 1217 (2017) ............................................................ 14

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Blatty v. New York Times Co.*,
   42 Cal. 3d 1033 (1986) ........................................................................ 14

*DeWitt v. Wright*,
   57 Cal. 576 (1881) .............................................................................. 15

*Dickinson v. Cosby*,
   37 Cal. App. 5th 1138 (2019) ............................................................ 14

*DiGiorgio Fruit Corp. v. AFL-CIO*,
   215 Cal. App. 2d 560 (1963) ............................................................. 14

*Navellier v. Sletten*,
   29 Cal. 4th 82 (2002) ........................................................................... 9

*Noel v. River Hills Wilsons, Inc.*,
   113 Cal. App. 4th 1363 (2003) ............................................................ 9

*Smith v. Maldonado*,
   72 Cal. App. 4th 637 (1999) ................................................................ 8

**California Statutes**

California Civil Code
   Section 45 ........................................................................................... 13

California Code of Civil Procedure
   Section 410.10 ...................................................................................... 5
   Section 425.16(a) .............................................................................. 4, 7
   Section 425.16(b)(2) ......................................................................... 5, 9
   Section 425.16(c)(1) ............................................................................. 4
   Section 425.16(e)(3) ............................................................................. 7

**Other Authorities**

First Amendment, United States Constitution ........................................... 5

Federal Rules of Civil Procedure,
   Rule 11 ............................................................................................... 11
   Rule 12(b)(6) ...................................................................................... 13
   Rules 12 and 56 .................................................................................... 4

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT TRAVIS SALWAY'S
MOTION TO DISMISS
21-CV-1297-BEN-BLM

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

Plaintiffs Reintegrative Therapy Association, Inc. ("RTA") and Dr. Joseph Nicolosi Jr. ostensibly bring this lawsuit to stop an alleged libel equating reintegrative and conversion therapies. In reality, this is a quintessential strategic lawsuit against public participation ("SLAPP") they bring to chill the valid exercise of Defendants' constitutional right to free speech. Indeed, the speech Plaintiffs seek to enjoin, for which they also seek damages is peer-reviewed, academic literature. More precisely, it advances a protocol for conducting a literature review that proposes to answer—in a later publication—questions about what actually constitutes conversion therapy, notwithstanding the varying definitions sometimes given to that subject. Plaintiffs' lawsuit improperly seeks to forbid, punish and deter this legitimate and basic scholarship, rather than joining any debate by contributing to the marketplace of ideas in the published literature on the subject. Defendant Dr. Travis Salway thus invokes California's anti-SLAPP statute to dispose of the complaint—and obtain his fees and costs—by way of a special motion to strike.

Plaintiffs admit that Dr. Salway, at all relevant times to their suit, was and remains a resident of British Columbia, Canada, and so he separately moves to dismiss this lawsuit for lack of personal jurisdiction. Black letter law from the Supreme Court teaches that the paradigmatic forum for the exercise of general jurisdiction over an individual is his place of domicile. A court may also exercise specific jurisdiction over a defendant whose tortious conduct takes place outside the forum, but only if he expressly aims the effects of his conduct at the forum state with knowledge that it will cause harm there. Plaintiffs fail to make factual allegations against Dr. Salway regarding such matters, no doubt because there is no basis to do so. Whatever the reason, this Court lacks personal jurisdiction over him.

For these reasons, and others elaborated below, Dr. Salway respectfully asks the Court to strike and dismiss Plaintiffs' complaint, and recover his fees and costs.

## II.   STATEMENT OF FACTS

On July 20, 2021, Plaintiffs RTA and Dr. Nicolosi commenced this lawsuit by filing their complaint for defamation against two individual defendants, David Kinitz and Dr. Salway. (ECF 1 [Compl.]). Plaintiffs allege both men reside in British Columbia, Canada, where they co-authored, along with several other individuals, a "peer reviewed," "online-only" article entitled, "The Scope and Nature of Sexual Orientation and Gender Identity and Expression Change Efforts: a Systematic Review Protocol" (the "Article"). (*Id.* ¶¶ 3, 4, 6, 9, 20, 28 & Exh. 1). The gravamen of Plaintiffs' complaint is that the Article includes actionable falsehoods by stating the following:

> "Conversion therapy," sometimes referred to as "reparative therapy," "reintegrative therapy," or "reorientation therapy," refers to a set of pseudo-scientific, discredited practices that aim to deny and suppress the sexual orientations, gender identities, and/or gender expressions of sexual and gender minorities (SGM).

(*Id.*, Exh. 1 at 2; *see also id.* ¶ 20 (quoting same)). Plaintiffs object to this statement only insofar as it equates reintegrative and conversion therapies. (*Id.* ¶¶ 20-25).

The Article presents a "systematic review protocol," which is a type of academic publication that describes the rationale, hypothesis, and planned methods for a contemplated review. (*Id.*, Exh. 1 at 3). In this case, the protocol is designed for a forthcoming review to "outline the scope and nature" of Sexual Orientation and Gender Identity and Expression Change Efforts ("SOGIECE") worldwide. (*Id.*). Stated differently, the Article advances a method to gather information to answer questions—in a later publication— about what constitutes "conversion therapy and SOGIECE," for example by identifying databases to search for responsive information. (*Id.*, Exh. 1 at 2 & 4). The Article explains the contemplated research will add scholarly clarity and value by filling "a critical knowledge gap, given ongoing public policy efforts to end SOGIECE and devise health and social support agendas for those who have experienced these practices." (*Id.*, Exh. 1 at 3).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Plaintiffs allege that Dr. Nicolosi founded RTA in June 2017, and serves as its clinical advisor and president of the board. (*Id.* ¶¶ 8, 13). According to the complaint, RTA is a California non-profit corporation that "holds exclusive rights" in "Reintegrative Therapy® psychological services"—at least within the territorial limits of the United States as endowed by Plaintiffs' registered, federal trademark. (*Id.* ¶ 7). Plaintiffs note that in September 2017, RTA published on its website a chart purporting to distinguish Reintegrative Therapy® from conversion therapy. (*Id.* ¶¶ 17-18). Plaintiffs accordingly take issue with the Article reporting a connection between "reintegrative therapy" and "conversion therapy" and the implicit characterization of the former, in this context, as a "pseudo-scientific, discredited" practice. (*Id.* ¶¶ 20-25).

Plaintiffs also allege "many gay and transgender activists, including the Defendants, are attempting to cause legislation to be enacted that would make SOCE, SOGIECE, and 'conversion therapy' methods unlawful and even criminal." (*Id.* ¶ 16; *see also id.* ¶ 27). According to the complaint, Dr. Salway "is an advocate of bill C-6 in Canada, which seeks to criminalize 'conversion therapy,'" and Dr. Salway failed to disclose his political interests in the Article. (*Id.* ¶ 27-28). Plaintiffs speculate that "this article will become a permanent part of scholarly record that will undoubtedly be cited by future journal articles, graduate students, courts and legislatures as authoritative." (*Id.* ¶ 28).[2] Plaintiffs also assert that Defendants published the Article with actual malice because they "either" knew that the statement was false or "lacked reasonable grounds for belief in the truth." (*Id.* ¶¶ 29 & 34).

According to the complaint, "[a] simple Google search of the term 'Reintegrative Therapy'" results in the website for RTA as the top result, so either Defendants "conducted due diligence" and "knowingly published false statements" or "recklessly published" them. (*Id.* ¶ 30). Although Plaintiffs admit the Article does not cite to "a single study of Reintegrative Therapy®" (*id.* ¶ 25), Plaintiffs aver that

---

[2] Plaintiffs cite a solitary publication referencing the Article. (ECF 1 [Compl.] ¶ 28).

Defendants had to know that any use of the term reintegrative therapy "directly implicates" RTA and Dr. Nicolosi because of their trademark registered in the United States. (*Id.* ¶ 31). The complaint also alleges that two persons who read the Article believed its use of the term reintegrative therapy referred to Plaintiffs. (*Id.* ¶ 40).

## III.  <u>LEGAL STANDARDS</u>

"California law provides for the pre-trial dismissal of certain actions, known as Strategic Lawsuits Against Public Participation, or SLAPPs that 'masquerade as ordinary lawsuits' but are intended to deter ordinary people 'from exercising their political or legal rights or to punish them for doing so.'" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013) (*quoting Batzel v. Smith*, 333 F.3d 1018, 1024 (9th Cir. 2003)). The state legislature explained its passage of this law to disincentivize a perceived, "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Code Civ. P. § 425.16(a). The statute expressly calls for a broad construction and the recovery of fees and costs by any prevailing defendant. *Id.* § 425.16(c)(1).

For more than two decades, federal and state courts have applied the law to strike SLAPPs. *See, e.g., U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (explaining that although "Rules 12 and 56 allow a litigant to test the opponent's claims before trial, California's 'special motion to strike' adds an additional, unique weapon to the pretrial arsenal, a weapon whose sting is enhanced by an entitlement to fees and costs"). When confronting such motions, courts generally undertake a two-part inquiry. *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010). "First, the defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Id.* (citation and quotation marks omitted). If the defendant makes this showing, the second step shifts the burden to the plaintiff to establish a probability of prevailing on the claim. *Hilton v. Hallmark*

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

*Cards*, 599 F.3d 894, 901-02 (9th Cir. 2010). A failure to do so warrants a granting of the motion "[b]ecause it is in the public interest to encourage continued participation in matters of public significance, and because this participation should not be chilled through abuse of the judicial process." *Id.* at 902. In evaluating the parties' respective showings, "the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Code Civ. P. § 425.16(b)(2).

Independent of these considerations, the Court should dismiss any lawsuit against a defendant over whom the Court lacks personal jurisdiction. Generally, the law imposes two limits on the Court's exercise of personal jurisdiction over a non-forum defendant, one statutory and one constitutional. *Fireman's Fund v. National Bank of Cooperatives*, 103 F.3d 888, 893 (9th Cir.1996); *Omeluk v. Langsten Slip & Batbyggeri*, 52 F.3d 267, 269 (9th Cir. 1995). Because California's long-arm statute extends jurisdiction as far as the United States Constitution permits, this inquiry distills into a single test of constitutional due process. *See* Cal. Civ. Proc. Code § 410.10; *see Fireman's Fund*, 103 F.3d at 893. The touchstone is whether the defendant presents sufficient contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Governing case law establishes that these constitutional considerations recognize the propriety of exercising personal jurisdiction that is either general or specific. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . ." *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 924 (2011). This exceptionally high standard is not satisfied unless the individual resides in the forum state. *Id.*; *see also, e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (demanding the defendant's physical presence in the forum state). Specific jurisdiction may exist if the defendant resides elsewhere, but demands that the controversy arise from or relate

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

to a defendant's acts within or directed to the forum state. *Goodyear*, 564 U.S. at 919. One test commonly applied to nonresidents asks whether a defendant outside the state committed an intentional act "expressly aimed" at the forum state and calculated to cause harm to the defendant there. *Calder v. Jones*, 465 U.S. 783, 789 (1984); *see also Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

If personal jurisdiction exists, a court should still dismiss any case in which the plaintiff fails to plead a plausible claim. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (as amended). A legal theory is not cognizable simply because it is alleged; mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court may also disregard any "legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The Court should not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis., Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

In this regard, the Court may consider any attachments or explicitly referenced materials pertaining to the complaint. *See Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (noting that when ruling on a motion to dismiss, the "Court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."). The Court should reject allegations that misrepresent the referenced materials. *See Steckman v. Hart Brewing*, Inc., 143 F.3d 1293, 1295–96 (9th Cir. 1998) (rejecting "conclusory allegations . . . contradicted by documents referred to in the complaint").

///

///

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT TRAVIS SALWAY'S
MOTION TO DISMISS
21-CV-1297-BEN-BLM

## IV.   ANTI-SLAPP MOTION TO STRIKE

This Court should strike Plaintiffs' complaint because it is plainly "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech" of both Dr. Salway and Mr. Kinitz, and is the paradigmatic SLAPP the law prohibits. Cal. Code Civ. P. § 425.16(a). Plaintiffs' complaint unabashedly seeks to impose liability on Dr. Salway based on his co-authorship of the Article—peer-reviewed, academic work published in an online-only medical journal about a protocol to study the frequency and nature of conversion therapy. (ECF 1 [Compl.] ¶ 20). The complaint also admits the public significance of this subject both by observing the attention given to it by legislatures around the world and by expressing concern for the Article's potential to "become a permanent part of scholarly record that will undoubtedly be cited by future journal articles, graduate students, courts and legislatures as authoritative." (*Id.* ¶ 28; *see also id.* ¶¶ 21, 42, & Exh. 1 at 3).

The Article is core free speech. Indeed, it enjoys the so-called "common interest privilege"—a protection that insulates certain speech, like published scholarship, from claims of defamation because both the communicator of and the audience for such speech share a common interest in its protection. *See, e.g.*, *Critical Care Diagnostics, Inc. v. Am. Ass'n for Clinical Chemistry*, No. 13cv1308 L (MDD), 2014 U.S. Dist. LEXIS 20711 (S.D. Cal. Feb. 18, 2014) (collecting cases recognizing that "scholarly activity generally fits within the common interest privilege"). Plaintiffs' allegations also plainly disclose that Dr. Salway has engaged in "writing made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e)(3). Lest there be any doubt, "[w]eb sites accessible to the public . . . are 'public forums' for purposes of the anti-SLAPP statute." *Barrett v. Rosenthal*, 40 Cal. 4th 33, 41 n.4 (2006).

Because the Article concerns a matter of public interest in an academic forum, it constitutes a quintessential privileged and protected activity. *See, e.g.*, *Critical Care Diagnostics, Inc.*, 2014 U.S. Dist. LEXIS 20711, at *15-*16 (granting anti-

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT TRAVIS SALWAY'S
MOTION TO DISMISS
21-CV-1297-BEN-BLM

SLAPP motion to strike a defamation claim arising from "research that was peer-reviewed prior to publication" in an article "directed to an interested audience and not to the general population"); *see also, e.g.*, *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1079 (N.D. Cal. 2012) (granting anti-SLAPP motion to strike a claim asserted against the defendant, "a professor whose allegedly defamatory statements appeared in Annals of Internal Medicine, an academic medical journal"). "The academy, and not the courthouse, is the appropriate place to resolve scientific disagreements . . . ." *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1021 (N.D. Cal. 2017) (collecting cases). Plaintiffs cannot overcome this privilege.

To sustain a cause of action for defamation, California law requires "(1) the intentional publication of (2) a statement of fact that (3) is false (4) unprivileged, and (5) has a natural tendency to injure or which causes special damage." *Harkonen*, 880 F. Supp. 2d at 1078 (citing *Smith v. Maldonado*, 72 Cal. App. 4th 637, 645 (1999)) (quotations omitted). Aside from the common interest privilege that applies to the Article given its conceded academic nature, Plaintiffs cannot establish a false statement of fact. As a systematic review protocol, the Article poses a question rather than any conclusion regarding the connection between reintegrative and conversion therapies or SOGIECE. Thus, the opening sentence observes only that "'[c]onversion therapy,' [is] *sometimes referred to as* . . . 'reintegrative therapy,'" and later reinforces the "*varying definitions* associated with this topic" make "it . . . necessary to define how particular terms are being taken up" so that one may properly "synthesize quantitative and qualitative literature that addresses the scope and nature of SOGIECE among SGM worldwide." (ECF 1 [Compl.] Exh. 1 at 2 & 3 (emphases added)).

Moreover, the authors did not imagine, misstate, or deliberately falsify the notion that conversion therapy is sometimes called reintegrative therapy. A variety of academic, journalistic and other sources use this very language. *See* Request for Judicial Notice ("RJN") at 1–3; Declaration of Adam Fox ("Fox Decl."), ¶¶ 2–8 &

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Exhs. 1–7.[3] Indeed, wholly apart from published, scholarly literature and other, more general examinations of the subject, even some governmental bodies likewise identify conversion therapy by the phrase "reintegrative therapy," among others. *See, e.g.*, RJN at 3–5; Fox Decl., ¶¶ 9–10 & Exhs. 8–9.

Separately, because the statements about which Plaintiffs complain fall within the common interest privilege, Plaintiffs bear the burden of showing Dr. Salway made them with "actual malice." *Critical Care Diagnostics, Inc.*, 2014 U.S. Dist. LEXIS 20711, at *16. They must accordingly show "hatred or ill will" animating the publication of willful falsehoods or at least a "reckless or wanton disregard for the truth." *Id.* at *17 & *18 (citing *Agarwal v. Johnson*, 25 Cal. 3d 932, 944 (1979) & *Noel v. River Hills Wilsons, Inc.*, 113 Cal. App. 4th 1363, 1370-71 (2003), among other authorities). Plaintiffs fail to make the required allegations and cannot hope to establish—by the required "clear and convincing" proof—that Dr. Salway acted with such actual malice. *Gertz v. Robert Welch*, 418 U.S. 323, 342 (1974). Indeed, Plaintiffs resort to alleging malice only by pleading bare and insufficient legal conclusions "[o]n information and belief." (ECF 1 [Compl.] ¶ 29).

Plaintiffs also aver that a "simple Google search" discloses that RTA has a website proclaiming it provides services distinct from conversion therapy. (*Id.* ¶ 30). Dr. Salway and his co-authors wrote a peer-reviewed, systematic review protocol to address the manner of identifying and evaluating existing "literature that addresses the scope and nature of SOGIECE among SGM worldwide" in light of "*varying definitions* associated with this topic." (ECF 1 [Compl.] Exh. 1 at 2 & 3 (emphasis added)). Such research entails more than a simple Google search, and actually reveals a body of scholarly literature and other sources that often characterize reintegrative therapy as conversion therapy. *See* RJN; Fox Decl., ¶¶ 2–10 & Exhs. 1–9.

---

[3] The court may consider matters outside of the pleadings when evaluating an anti-SLAPP motion. Cal. Code Civ. P. § 425.16(b)(2); *see, e.g., Navellier v. Sletten*, 29 Cal. 4th 82, 89 (2002).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

Against this backdrop, Plaintiffs' self-serving website denying a connection between the terms is not dispositive. *Cf. Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2020 U.S. Dist. LEXIS 156844, *13, 2020 WL 5095458 (W.D. Wa. Aug. 28, 2020) (explaining, in a Lanham Act case, that "a plaintiff must provide admissible evidence of literal falsity or customer confusion beyond self-serving conclusory statements"), *vacated, in part, affirmed in part, and remanded by* 854 Fed. Appx. 171 (9th Cir. 2021); *Natural-Immunogenetics Corp. v. Newport Trial Group*, No. SACV 15-02034-JVS, 2019 U.S. Dist. LEXIS 70004, at *26 (C.D. Cal. Feb. 28, 2019) (on grant of summary adjudication, defendants' "self-serving declaration that the website contained 'false' accusations" in support of their affirmative defense was disregarded as "general and conclusory"). Plaintiffs thus cannot hope to establish a probability of success on the merits of their defamation claim, and this Court should grant Dr. Salway's special motion to strike and award him his fees and costs in bringing it.

## V.   **MOTION TO DISMISS**

### A.   **The Court Lacks Personal Jurisdiction Over Dr. Salway**

Independent of the special motion to strike this Court should grant to dispose of Plaintiffs' improper SLAPP in violation of Dr. Salway's core First Amendment rights and the common interest privilege that insulates his scholarly research from this lawsuit, the Court should dismiss the complaint because it lacks personal jurisdiction over Dr. Salway. As a preliminary matter, this Court lacks general jurisdiction over Dr. Salway, whom Plaintiffs concede at all relevant times resided in British Columbia, Canada. (ECF 1 [Compl.] ¶¶ 3, 6 & 9). Dr. Salway does not reside, and is not "domicile[d]" or "at home" in California, or elsewhere in the United States. *Goodyear*, 564 U.S. at 924. Accordingly, this Court has no basis to exercise general personal jurisdiction over Dr. Salway consistent with the traditional notions of fair play and substantial justice the guide this fundamental due process inquiry. *Id.*

Plaintiffs likewise cannot demonstrate sufficient contacts to support the Court's exercise of specific jurisdiction over Dr. Salway. As noted, Plaintiffs concede

that Dr. Salway is not a resident of the United States and instead lived in British Columbia, Canada "at all times" mentioned in their complaint. (ECF 1 [Compl.] ¶¶ 3 & 6). Thus, when Dr. Salway engaged in his scholarly work on the Article, he was living in Canada, not California. (*Id.* ¶ 9). "Where allegedly tortious conduct takes place *outside* the forum and has effects inside the forum," the Ninth Circuit conducts a jurisdictional analysis commonly known as the "effects test." *AMA Multimedia, Ltd. Liab. Co. v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) (citing *Calder* and its progeny). This test authorizes a court's exercise of jurisdiction over a nonresident defendant for his acts outside the forum only if the nonresident defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). Plaintiffs fail to satisfy the effects test with respect to Dr. Salway.

The complaint makes no allegations to satisfy the effects test undoubtedly because doing so would run afoul of counsel's Rule 11 obligations. Indeed, far from alleging that Dr. Salway expressly aimed publication of the Article at the forum state where he knew it would be likely to cause harm, the complaint says only that an "online-only" medical journal published the Article. (ECF 1 [Compl.] ¶ 20). Of course, "maintenance of a passive website alone cannot satisfy the express aiming prong." *Brayton Purcell LLP*, 606 F.3d at 1129. Moreover, Plaintiffs do not allege that Dr. Salway had any role in the Article's publication, as distinct from its authorship. Tellingly, the Article also fails to mention California even once—a sharp contrast to its more than twenty (20) mentions of Canada, including Dr. Salway's role "lead[ing] a program of research with a substantive focus on SOGIECE at Simon Fraser University" in British Columbia. (ECF 1 [Compl.] Exh. 1 at 7).

The Article also fails to make any mention whatsoever of RTA or Dr. Nicolosi, rendering any suggestion that Dr. Salway either intended or knew it was likely to injure either of Plaintiffs an entirely absurd and insufficient basis on which to premise

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

the exercise of personal jurisdiction. *See Calder*, 465 U.S. at 789 ("The mere fact that [defendants] can 'foresee' that the [allegedly libelous] article will be circulated and have an effect in [the forum state] is not sufficient for an assertion of [specific personal] jurisdiction."); *Schwarzenegger*, 374 F.3d at 807 (concluding an advertisement showing a picture of Arnold Schwarzenegger was not directed to California despite the subject of the advertisement's residence and livelihood in California). California is not "the focal point both of the story and of the harm suffered." *Calder*, 465 U.S. at 788-89. Accordingly, Plaintiffs cannot hope to demonstrate the existence of specific jurisdiction over Dr. Salway based on his role as a co-author of the Article.

This Court's exercise of jurisdiction over Dr. Salway would also be unfair and unreasonable for a variety of independent reasons. In this regard, courts may consider (1) the existence of an alternate forum, (2) the extent of conflict with the sovereignty of defendant's state, (3) the forum state's interest in adjudicating the dispute, (4) the burden on the defendant in defending in the forum, (5) the importance of the forum to plaintiff's interest in convenient and effective relief, (6) the most efficient judicial resolution of the controversy, and (7) whether the defendant may anticipate being haled into the forum. *See Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1486-87 (9th Cir. 1994); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Canadian courts plainly provide an alternate forum for Plaintiffs' claims. Moreover, neither California nor the United States generally have any significant interest in adjudicating this matter to address scholarly activities conducted solely in Canada and funded by the Canadian Institutes of Health Research. (ECF 1 [Compl.] Exh. 1, at 7). Forcing an individual like Dr. Salway to defend himself in this forum—foreign to both him and this controversy—is thus unfair and unreasonable given that he directed no activities to this state with the Article.

The Court should thus dismiss Dr. Salway from the action because it lacks personal jurisdiction over him.

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT TRAVIS SALWAY'S
MOTION TO DISMISS
21-CV-1297-BEN-BLM

**B.     Plaintiffs Fail To State A Cognizable Claim Against Dr. Salway[4]**

Substantively, the complaint pleads no facts sufficient to support a viable claim against Dr. Salway for defamation or libel per se. "Libel is a false and unprivileged publication by writing . . . , which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45. "[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming it to be in possession of objectively verifiable facts, the statement is not actionable." *Partington v. Bugliosi*, 56 F.3d 1147, 1156 (9th Cir. 1995) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).

The Article identifies its aim as proposing a systematic protocol for conducting a qualitative and quantitative evaluation of "conversion therapy and SOGIECE," about which the authors state there exists "a critical knowledge gap." (ECF 1 [Compl.] Exh. 1 at 2-4). One area about which the authors propose to bring about greater intellectual rigor and clarity is the "varying definitions associated with this topic." (*Id.* at 3). It is in this context, particularly in explaining the background of the subject, that the Article makes a single, passing reference to "conversion therapy" being "sometimes referred to as . . . 'reintegrative therapy,'" among other things. (*Id.* at 2).[5] This reed is simply too slender to support a viable defamation (libel per se) claim.

Among other fatal defects, nothing in the Article concerns Plaintiffs. "An otherwise defamatory statement is actionable only if it is 'of and concerning' the

---

[4] Although the operative standards that apply are different, the substantive bases for dismissal pursuant to Rule 12(b)(6) overlap with the reasons for granting Dr. Salway's special motion to strike. Accordingly, the Court should consider the arguments for granting each motion in support of the other.

[5] The Article also lists, both in Table 2 and Appendix B, the phrase "reintegrative therap\*" as part of a peer-reviewed search strategy developed in consultation with a research librarian to assure inclusion and consideration of an "exhaustive list of concepts and controlled terms based on relevant papers." (ECF 1 [Compl.] Exh. 1 at 4, 5 & Appendix B).

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

plaintiff." *Dickinson v. Cosby*, 37 Cal. App. 5th 1138, 1160 (2019). "The 'of and concerning' or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the *direct object of criticism* and denying it to those who *merely complain of nonspecific statements* that they believe cause them some hurt." *Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1044 (1986) (emphases added). The Article nowhere directly targets RTA or Dr. Nicolosi for any criticism, let alone discussion.[6]

Plaintiffs attempt to avoid this defect by pleading the conclusory allegation that their registered trademark in the United States—"Reintegrative Therapy®"—"necessarily *must* be understood as referring to Plaintiffs by clear implication." (ECF 1 [Compl.] ¶ 40) (emphasis added). But Plaintiffs' US trademark has no bearing on scholarship conducted by a professor in Canada. *Cf. Person's Co. v. Christman*, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990) ("The concept of territoriality is basic to trademark law; trademark rights exist in each country solely according to that country's statutory scheme."). Plaintiffs' trademark cannot make up for their failure to plausibly plead any "description or circumstance" relating to the Article showing Dr. Salway intended to "direct[]" at Plaintiffs the remarks about which they complain. *DiGiorgio Fruit Corp. v. AFL-CIO*, 215 Cal. App. 2d 560, 569 (1963).

The complaint admittedly purports to identify one person in Canada and another in California who believed the Article referred to both Plaintiffs. (ECF 1 [Compl.] ¶ 40). Whatever one makes of these allegations, they remain separate from the requirement that Plaintiffs plead facts demonstrating that Dr. Salway actually intended to target Plaintiffs in the Article. *See SDV/ACCI, Inc. v. AT&T Corp.*, 522 F.3d 955, 960 (9th Cir. 2008) ("[I]t is essential not only that it should have been written concerning the plaintiff, but also that it was *so understood* by at least some

---

[6] This is not the only case by Plaintiffs' counsel to overreach in the application of this important element. *See, e.g.*, *Bartholomew v. YouTube, LLC*, 17 Cal. App. 5th 1217, 1232 (2017) (rejecting libel claim brought by the same counsel representing Plaintiffs in this case because the challenged speech was not "of and concerning" the plaintiff).

one third person.") (quoting *DeWitt v. Wright,* 57 Cal. 576, 578 (1881)). Plaintiffs yet again simply sidestep the requirement that they plead facts about Dr. Salway.

Instead, Plaintiffs resort to making conclusory allegations of his "malicious intent," and only "[o]n information and belief." (ECF 1 [Compl.] ¶ 29). As another court recently explained, that stratagem fails as a matter of law:

> To determine whether a plaintiff adequately pleads actual malice, the court must "disregard the portions of the complaint where [the Plaintiff] alleges in a purely conclusory manner that the defendants had a particular state of mind in publishing the statements as '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' are insufficient to support a cause of action."

*Resolute Forest Prods. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1018 (N.D. Cal. 2017) (quoting *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703-04 (11th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))); *see id.* ("States of mind may be pleaded generally, but a plaintiff still must point to details sufficient to render a claim plausible.") (quoting *Pippen v. NBC Universal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013)) Plaintiffs allege no facts about Dr. Salway's state of mind and improperly rely on conclusory and formulaic allegations the Court should reject.

Importantly, the complaint fails to allege that Dr. Salway had any doubts—let alone serious doubts—as to the truth of the Article. Plaintiffs contend that Dr. Salway is an activist against conversion therapy, but that suggests if Plaintiffs do not practice conversion therapy, Dr. Salway has no reason to harbor any malice against them. Regardless, whatever Dr. Salway's political beliefs or activities, the Court should not assume that he includes falsehoods to align with those beliefs when he publishes academic papers in peer-reviewed literature. Indeed, the suggestion that the Article includes such falsehoods assumes a complete breakdown in the peer-review process by the publisher as well. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 593 (1993) (observing that "submission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT TRAVIS SALWAY'S
MOTION TO DISMISS
21-CV-1297-BEN-BLM

substantive flaws in methodology will be detected"). Such deficiencies in Plaintiffs' allegations thus render them insufficient to support viable claims against Dr. Salway for defamation or libel per se, and the Court should accordingly dismiss them.

## VI.   **CONCLUSION**

For all the foregoing reasons, Dr. Salway respectfully requests the Court to grant his special motion to strike, as well as his motion to dismiss, and enter an award of fees and costs against the Plaintiffs for commencing this SLAPP.

Dated:  October 14, 2021                    Squire Patton Boggs (US) LLP


By: */s/Adam Fox*
                                                        Adam R. Fox
Attorneys for Defendant
Dr. Travis Salway

010-9271-5899/10/AMERICAS

SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071

DEFENDANT TRAVIS SALWAY'S
MOTION TO DISMISS
21-CV-1297-BEN-BLM