**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| REINTEGRATIVE THERAPY ASSOCIATION, INC., a California corporation; and DR. JOSEPH NICOLOSI JR., an individual,<br><br>  Plaintiffs,<br><br>v.<br><br>DAVID J. KINITZ, an individual; and TRAVIS SALWAY, an individual,<br><br>  Defendants. | Case No.: 3:21-cv-1297-BEN-BLM<br><br>**ORDER DENYING-IN-PART MOTION FOR AN ORDER AUTHORIZING SERVICE OF THE SUMMONS AND COMPLAINT ON DEFENDANT DAVID J. KINITZ BY E-MAIL AND/OR MAIL**<br><br>**[ECF No. 6]** |

## I. <u>INTRODUCTION</u>

Plaintiffs REINTEGRATIVE THERAPY ASSOCIATION, INC., a California Corporation; and DR. JOSEPH NICOLOSI JR., an individual (collectively, "Plaintiffs") bring this action against Defendants DAVID J. KINITZ, an individual ("Mr. Kinitz"), and TRAVIS SALWAY, an individual ("Dr. Salway") (collectively, "Defendants") for defamation. *See* ECF No. 1. Before the Court is the Motion for an Order Authorizing Service of the Summons and Complaint Defendant on David J. Kinitz by e-mail and/or mail (the "Motion"). ECF No. 6. After considering the papers submitted, supporting documentation, and applicable law, the Court **DENIES-IN-PART** the Motion.

/ / /

## II. BACKGROUND

Plaintiffs allege that on January 8, 2021, Defendants published an article containing false and defamatory statements mischaracterizing their Reintegrative Therapy protocol as a form of conversion therapy. ECF No. 1 at ¶¶ 7, 13, 20, 38.

On July 20, 2021, Plaintiffs filed this lawsuit, alleging claims for relief for (1) defamation (libel *per se*) and (2) injunctive relief. ECF No. 1. On August 24, 2021, Plaintiff served Travis Salway with the Complaint. ECF No. 3; ECF No. 4 at 23-25. On October 14, 2021, Defendant Dr. Salway timely appeared, filling a Special Motion to Strike and Motion to Dismiss the Complaint. ECF No. 9. Among other things, Dr. Salways seeks to dismiss the Complaint for lack of personal jurisdiction[1]. *Id.* However, to date, Plaintiffs have not served Mr. Kinitz. Because Plaintiffs believe Mr. Kinitz is a foreigner residing in Canada, on October 8, 2021, Plaintiffs filed the instant Motion seeking to serve Mr. Kintiz by e-mail. ECF No. 6.

## III. LEGAL STANDARD

Rule 4 of the Federal Rules of Civil Procedure ("Rule 4") governs service of process. Under Rule 4, "[u]nless federal law provides otherwise, an individual … may be served at a place not within any judicial district of the United States" in any of the following methods:

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:
>
> > (A) as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

---

[1] Based upon the Court's conclusion in this order, it would appear service on Dr. Salway was invalid. However, by appearing to contest personal jurisdiction rather than service of the summons and complaint, Dr. Salway appears to have waived this argument.

>>    (B) as the foreign authority directs in response to a letter rogatory or letter of request; or
>>    (C) unless prohibited by the foreign country's law, by:
>>        (i) delivering a copy of the summons and of the complaint to the individual personally; or
>>        (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or
> (3) *by other means not prohibited by international agreement*, as the court orders.

FED. R. CIV. P. 4(f). "Subsection (1) implements the [Hague] Convention; subsection (2) identifies methods for serving persons in countries that are not members of the Convention; and subsection (3) 'serves as a safety valve for unanticipated situations,', including when an exception to the Convention applies." *Facebook, Inc. v. 9 Xiu Network (Shenzhen) Tech. Co.*, 480 F. Supp. 3d 977, 981 (N.D. Cal. Aug. 19, 2020) (quoting 4B Charles A. Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1133 (4th ed. April 2020 update)).

The Hague Service Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention"), is an internationally agreed means of service expressly incorporated into and referenced by Rule 4. It is "a multilateral treaty intended 'to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions ... receive actual and timely notice of suit, and to facilitate proof of service abroad.'" *Granger v. Gary E. Nesbitt & Polaris Transport Carriers, Inc.*, No. CV 4:21-11066-TSH, 2021 WL 4658658, at *3 (D. Mass. Oct. 7, 2021) (citing *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988)). Thus, under Rule 4, a party may serve a foreign defendant residing in a country that is a member of the Hague Convention by a means of service authorized by the Hague Convention, FED. R. CIV. P. 4(f)(1), *or* "*by other means not prohibited by international agreement*" but only pursuant to a court order, FED. R. CIV. P. 4(f)(3) (emphasis added).

## IV. **DISCUSSION**

Plaintiffs seek an order "authorizing alternate service of process of the Summons, Complaint, and related documents on Mr. Kinitz by e-mail and mail, as well as an extension of 90 days-time from the date of entry of any order authorizing service to effect such service." Motion, ECF No. 6-1 ("Mot.") at 6:2-4. They indicate that both "Defendants Dr. Salway and Mr. Kinitz are believed to be foreign individuals residing in Canada." Mot. at 2:6.

The United States and Canada are both parties to the Hague Convention. *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017); *see also TracFone Wireless, Inc. v. Bitton*, 278 F.R.D. 687, 689 (S.D. Fla. 2012) ("Both the United States and Canada are signatories to the Convention, and it applies to all civil cases where there is an occasion to transmit a judicial document for service abroad.") (citing *Volkswagenwerk*, 486 U.S. at 705). Thus, "[s]ervice of process to foreign defendants in Canada," like Defendants here, "must comply with the Hague Convention.'" *Granger*, 2021 WL 4658658, at *3.

Plaintiffs state that "[a]fter filing the Complaint, [they] conducted investigative efforts into the current physical addresses and phone numbers of Defendants Dr. Salway and Mr. Kinitz for purposes of effecting service of process of the Complaint and related documents by personal service." Mot. at 2:7-9. They "provided this information to an international service of process agency based in Miami, FL in the United States and instructed the process service agency to attempt service." *Id.* at 2:9-11.

On August 24, 2021, this agency effected service of process on Dr. Salway. Mot. at 2:12-13. However, that same day, the process server unsuccessfully attempted service of process on Mr. Kinitz at the only known address for Mr. Kinitz, which "is the address located at the Dalla Lana School of Public Health, where Mr. Kinitz is believed to be a Ph.D. candidate and researcher." Mot. at 2:16-18; *see also* Exhibit 1 to Declaration of Robert Weisenburger, Return of Non-Service of Karen Sorrenti, ECF No. 6-2 at 5. The process server, Karen Sorrenti, stated under penalty of perjury that on August 24, 2021, at 2:25 p.m., she attempted service at the Dalla Lana School of Public Health, University of

Toronto, 155 College Street, RM 540, Toronto, Ontario, but the doors were locked, no security was present, and there was no answer when she called the number on the door for deliveries. *Id.* She also stated that she called a different number, for a Canadian shipment company, but the male who answered stated no one was present in the building as it was in lockdown. *Id.* The individual also stated he did not know who Mr. Kinitz is. *Id.* The process server left a notice on the door, but never heard back from anyone. *Id.*

Plaintiffs' counsel explains they attempted to serve Mr. Kinitz at the aforementioned address because it was the only address they could locate for him. Declaration of Robert Weisenburger in Support of Motion, ECF No. 6-2 ("Weisenburger Decl.") at 2-3, ¶¶ 4-5. He states that even after conducting "additional searches, including conducting subscription only public records searches for an alternate physical address," no additional addresses could be located. *Id.* at 2-3, ¶ 5; *see also* Mot. at 4:27-5:1.

Assuming personal service is authorized under the Hague Convention, Plaintiffs' use of the address appears reasonable given Mr. Kinitz's publicly available Google Scholar profile shows that he is a doctoral candidate at the Dalla Lana School of Public Health. Exhibit 3 to Weisenburger Decl., ECF No. 6-2 at 12; *see also* https://scholar.google.com/citations?user=fttMsBkAAAAJ&hl=en&oi=ao (evidencing Mr. Kinitz's publicly available Google Scholar profile). Further, it appears that further attempts to serve Mr. Kinitz at this location would be unlikely to prove successful given Plaintiffs have provided the Court with a print-out from the Dalla Lana School of Public Health, advising that subject to "very few exceptions," "the building is closed to all faculty, staff and students" and "courses will be delivered remotely." Exhibit 2 to Weisenburger Decl., ECF No. 6-2 at 7-9; *see also* https://www.dlsph.utoronto.ca/covid-19-frequently-asked-questions/; Mot. at 2:18-22, 4:25-27. Plaintiffs also state that they have "contacted the Dalla Lana School of Public Health by telephone and received confirmation by way of automated voice message that the campus is shut down with no indication as to when it will re-open." Mot. at 2:22-24. Thus, the Court finds that assuming it was authorized by the Hague Convention, Plaintiff's attempt at service at this

address was reasonable. However, having failed to personally serve Mr. Kinitz, Plaintiffs now seek to serve him by mail and/or e-mail. The Court must first analyze whether service by e-mail is authorized under Rule 4 and/or the Hague Convention. Then, it must analyze whether service at the proposed e-mail address is likely to provide notice of this lawsuit.

Plaintiffs argue that the rules of court of all Canadian provinces authorize alternative methods for service upon a party, which is referred to as substitutional service. Mot. at 5:7-12. Plaintiff directs the Court to *Knott v. Sutherland*, A.J. No. 1539 (2009), where the Alberta Court of Queen's Bench ordered substituted service by sending an amended statement of claim to the profile of the defendant on Facebook, together with a local daily newspaper publication of a notice of the action, and sending a copy of the action to the defendant's last known employer's human resources department. Mot. at 5:14-17. They argue that "[a] similar substituted service is appropriate to employ in this present action." Mot. at 5:17-18. However, as outlined below, the Court finds that Plaintiffs' attempts to serve Mr. Kinitz are deficient and do not warrant e-mail service at this point given Plaintiffs have not first attempted service on Canada's Central Authority.

In *Water Splash*, the United States Supreme Court expressly held that the Hague Convention does not prohibit service by mail, and thus, remanded for further proceedings to determine whether the Canadian defendant could be served by mail. 137 S. Ct. at 1513. However, in doing so, the Court also held that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Id.* at 1507 (quoting *Volkswagenwerk*, 486 U.S. at 699). Thus, *Water Splash* makes clear that service by mail is indeed permissible for the Canadian defendant in this case under both Rule 4 and the Hague Convention. 137 S. Ct. at 1513. It also makes clear that where it applies, the Hague Convention is mandatory. *Id.* at 1507. *Water Splash* leaves the issue of whether e-mail service is authorized unaddressed.

Executed in the 1960s, the Hague Convention does not reference service by e-mail. *Facebook*, 480 F. Supp. 3d at 980. However, under the Hague Convention, a party may serve documents in several ways that would not require a court order under Rule 4(f)(1)

because they are authorized by international agreement.

"First, an applicant can send a request for service to a receiving country's central authority, an entity that every signatory to the Convention must establish." *Facebook*, 480 F. Supp. 3d at 980. "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Volkswagenwerk*, 486 U.S. at 698-99 (citing Hague Convention, 20 U.S.T. 362, T.I.A.S. 6638, Art. 2); *see also Brockmeyer v. May*, 383 F.3d 798, 804 (9th Cir. 2004) (noting that "[t]he Hague Convention affirmatively authorizes service of process through the Central Authority of a receiving state," and "Rule 4(f)(1), by incorporating the Convention, in turn affirmatively authorizes use of a Central Authority"). "Canada has established a Central Authority for each of its provinces, including a Central Authority for Quebec." *TracFone*, 278 F.R.D. at 690. "The central authority must attempt to serve the defendant by a method that is compatible with the receiving country's domestic laws, and then provide the applicant with a certificate either confirming that service was successful or listing the reasons that prevented service." *Facebook*, 480 F. Supp. 3d at 980 (citing Hague Convention, Arts. 2-7).

Second, the Hague Convention authorizes "alternative methods of service unless the receiving country objects." *Facebook*, 480 F. Supp. 3d at 980. Such "methods include service by diplomatic and consular agents, service through consular channels, service on judicial officers in the receiving country, and direct service 'by postal channels.'" *Id.* (quoting the Hague Convention, Arts. 8-10); *see also TracFone*, 278 F.R.D. at 690 (noting that "Canada does not object to Article 10(a) of the Convention regarding the use of postal channels"). This confirms the *Water Splash* Court's holding that service by mail, as "direct service 'by postal channels,'" is authorized where the receiving state does not object and such service is authorized under otherwise-applicable law. 137 S.Ct. at 1513. To B

Third, the Hague Convention allows "countries to designate additional methods of service within their borders, either unilaterally or through side agreements with each

other." *Id.* at 980-81 (citing Hague Convention, Arts. 11, 19). Plaintiffs do not direct the Court to any authority addressing alternative methods.

Fourth, the Hague Convention does not allow "the receiving country to refuse service 'on the ground that, under its internal law, it claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not permit the action upon which the application is based.'" *Id.* at 981 (citing Hague Convention, Art. 13). If a receiving country fails to abide by this rule, "special forms of service" may be authorized. *Id.* (citing Rule 4 Notes, subdivision (f)(3)). Here, there is no indication that Canada would refuse service by claiming exclusive jurisdiction, so this method of service appears inapplicable.

Finally, "if the plaintiff attempts to serve the defendant through a central authority and no certificate of any kind is received, the plaintiff can move for default judgment six months after initiating service." *Id.* (citing Hague Convention, Art. 15 ¶ 2). "Alternatively[,] in this scenario, the presiding judge 'may direct a special method of service.'" *Id.* (citing Rule 4 Notes, subdivision (f)(3)). Here, it appears that Plaintiff seeks "a special method of service" by serving Mr. Kinitz via e-mail. However, it also appears that under the Hague Convention, Plaintiffs must attempt to serve Mr. Kinitz through Canada's central authority first. *See, e.g.*, *Brockmeyer*, 383 F.3d at 801 ("The primary means by which service is accomplished under the Convention is through a receiving country's 'Central Authority.'").

For example, in *Brockmeyer*, the Ninth Circuit held that Rule 4(f)(1) did "not provide a basis for service" on an English defendant because it was "undisputed that [the plaintiff] did not use either the Central Authority under the Hague Convention or any other internationally agreed means for accomplishing service." 383 F.3d at 804. Thus, even though the court held "that the Hague Convention allows service of process by international mail," it found service by mail ineffective in that case because the plaintiffs "simply dropped the complaint and summons in a mailbox in Los Angeles, to be delivered by ordinary, international first class mail." *Id.* at 808-09. However, "[t]here is no affirmative authorization for such service in Rule 4(f)." *Id.*

-8-

Similarly, in *ePlus Tech., Inc. v. Aboud*, 155 F. Supp. 2d 692, 701 (E.D. Va. 2001), the Court dismissed a case for lack of proper service of process pursuant to Rule 12(b)(5) of the federal rules of Civil Procedure, where the plaintiff, rather than "avail[ing] itself of the Convention's principal option to serve process through Canada's or Quebec's Central Authorities[,] . . . chose to employ a private server to deliver the documents to [the defendant]'s spouse and to post the documents at [the other defendant]'s residence." *Id.* at 697. The plaintiff argued these alternative service methods were appropriate because "the contracting State [*i.e.*, Canada] 'permits' all alternative service methods not explicitly prohibited by that State, whereas defendants claim a contracting State only 'permits' the service methods it specifically adopts." *Id.* However, the court concluded that the plaintiff's reading of Article 19 of the Hague Convention "would lead to an anomalous result." *Id.* at 700. In rejecting the alternative methods of service used, the court stated that "[t]he lesson of the result reached here is that a party seeking to serve process in foreign countries that are signatories to the Hague Convention should make use of the Central Authority designated by that country." *Id.* at 701. It noted that "[t]his is typically the simplest and most secure mode of service in these circumstances." *Id.* Thus, in *ePlus*, "[t]o effect proper service, plaintiff needed to do no more than to request the Central Authority in Quebec to effect service pursuant to the Convention." *Id.* "The Central Authority in Quebec would then have employed a sheriff or bailiff to perfect service in accordance with Quebec law." *Id.*

Thus, the Court orders that Plaintiffs must first request service through Canada's central authority. *See Brockmeyer*, 383 F.3d at 804; *see also Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1021 (N.D. Cal. 2015) ("The Court finds that Plaintiffs adequately served the Defendant through use of a designated Central Authority under article 18 of the Hague Convention in compliance with Rule 4(f)(1) of the Federal Rules of Civil Procedure."); *TracFone*, 278 F.R.D. at 690 (finding "that directing the Clerk's Office to request that the Quebec Central Authority effect service of on Defendant Bitton pursuant to Rule 4(f)(1) and the Convention is appropriate"). The Hague Convention also permits

service of process through the destination state's central authority *or through other means not objected to by the state*." *Granger*, 2021 WL 4658658, at *4 (citing *Brockmeyer*, 383 F.3d at 801); *see also Water Splash*, 137 S. Ct. at 1508 ("Submitting a request to a central authority is not, however, the only method of service approved by the Convention."). Should service of the central authority prove unsuccessful, a court may order alternative means of service pursuant to Rule 4(f)(3) so long as no international agreement prohibits that alternative method. *See, e.g.*, *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (affirming the propriety of allowing service of process by regular mail and e-mail under Fed. R. Civ. P. 4(f)(3) while concluding that "[c]onsidering the facts presented by this case, … not only [was] service of process by e[-]mail … proper … but in this case, it was the method of service most likely to reach RII"). "Courts have authorized a variety of alternative methods of service abroad under current Rule 4(f)(3) and former Rule 4(i)(1)(E), including not only ordinary mail and e-mail but also publication and telex." *Brockmeyer v. May*, 383 F.3d 798, 805 (9th Cir. 2004). "The decision whether to allow alternative methods of serving process under Rule 4(f)(3) is committed to the 'sound discretion of the district court.'" *Id.* (quoting *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1016 (9th Cir. 2002) (permitting service on a foreign corporation by regular mail and by e-mail, when authorized by the district court)).

A prerequisite to considering service by mail or e-mail is verifying that the receiving country does not object to the means for service sought to be used by the plaintiff. *Granger*, 2021 WL 4658658, at *4; *see also Brockmeyer*, 383 F.3d at 801 (holding that plaintiffs may serve defendants internationally through means other than the state's central authority *only if* the state does not object to the alternative means). This is because "[s]ome states have expressly objected to certain methods of service." *Id.* (citing *Prem Sales, LLC v. Guandong Chigo Heating & Ventilation Equip. Co., Ltd.*, 494 F. Supp. 3d 404, 414 (N.D. Tex. 2020)). As long as a state has not expressly objected to a method of service, courts will "look to 'the internal service rules of the destination State to determine whether that State would object to the particular method of service' proposed or

used." *Id.* (citing, *inter alia*, *Dimensional Commc'ns, Inc. v. OZ Optics Ltd.*, 218 F. Supp. 2d 653, 656 (D.N.J. 2002) (looking to procedural rules in Ontario, Canada to determine whether service was valid)); *see also Inversiones Papaluchi S.A.S. v. Superior Ct.*, 20 Cal. App. 5th 1055, 1065–66 (2018) ("In other words, in cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law.").

Here, the Complaint alleges Mr. Kinitz resides in "the Country of Canada in the province of British Colombia." ECF No. 1 at 2, ¶ 4. Thus, the Court looks to the federal system of Canada, and more specifically the law of the Province of Ontario. *Granger*, 2021 WL 4658658, at *4. "Rule 16 of the Ontario Rules of Civil Procedure governs service of process."[2] *Id.* Rule 16.02(1)(a) instructs that where a document must be personally service, service on an individual must be made "by leaving a copy of the document with the individual." However, Rule 16.03 permits service of process in several alternative ways, including but not limited to (1) acceptance of service by the defendant's lawyer, provided he or she endorses an acceptance of service; (2) service by mail to the defendant's last known address (only effective when received); or (3) if service at a person's place of residence cannot be effected, leaving the documents at the defendant's residence with anyone who appears to be an adult member of the same household, and within the next day also mailing a copy to the person at the place of residence. *See also Granger*, 2021 WL 4658658, at *4.

---

[2] The Ontario Rules of Civil Procedure are publicly available at https://www.ontario.ca/laws/regulation/900194. At any stage of a proceeding, courts may take judicial notice of (1) facts not subject to reasonable dispute and "generally known within the trial court's territorial jurisdiction" and (2) adjudicative facts, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(1)-(2). The Court takes judicial notice of this undisputed and publicly available information displayed on a government website. *See, e.g.*, *King v. Cty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018) (taking judicial notice of "undisputed and publicly available information displayed on government websites").

Notably, Rule 16.03(7)-(9) expressly provides for service "by e-mailing a copy of the document in accordance with subrule 16.06.1(1)" **but only where** the documents are being served on the Crown in Right of Ontario, a child's lawyer, or a public guardian and trustee. *See also* Rule 16.03(10) (providing that "[w]here service is made by e-mail under subrule (7), (8) or (9) between 4 p.m. and midnight, it is deemed to have been made on the following day"). Rule 16.06.1(1), which Rule 16.03 references, provides that "[t]he e-mail message to which a document served by e-mail in accordance with these rules is attached shall include, (a) the sender's name, address, telephone number and e-mail address; (b) the date and time of transmission; and (c) the name and telephone number of a person to contact in the event of a transmission problem." Here, service is not being made on the Crown, a child's lawyer, or a public guardian, and thus, does not appear to be expressly authorized.

Rule 16.04(1), governing "Substituted Service of Dispensing with Service," provides that "[w]here it appears to the court that it is impractical for any reason to effect prompt service of … any … document required to be served personally or by an alternative to personal service under these rules, the court may make an order for substituted service or, where necessary in the interest of justice, may dispense with service." Where service is made via substituted service, "the court shall specify when service in accordance with the order is effective." Rule 16.04(2). Finally, Rule 16.08 provides that if "a document has been served in a manner other than one authorized by these rules or an order, the court may make an order validating the service where the court is satisfied that, (a) the document came to the notice of the person to be served; or (b) the document was served in such a manner that it would have come to the notice of the person to be served, except for the person's own attempts to evade service."

In sum, the Ontario Rules do not appear to authorize service by e-mail in this case because it does not involve service upon the Crown in Right of Ontario, a child's lawyer, or a public guardian and trustee. Rule 16.03(7)-(9). However, Canada also explicitly provides that the Court may make an order invalidating otherwise improper service. Rule

16.08. The Court may also authorize substituted service. Rule 16.04. With that being said, other courts have held that where a method of service does not appear to be permitted under the Ontario Rules, that indicates Canada would object to that particular method of service. *See, e.g.*, *Granger*, 2021 WL 4658658, at *4 (denying the defendants' motion to dismiss and quashing service of the summons because service by leaving documents with a designated individual was invalid as the Ontario Rules did not permit service in that manner, indicating "Canada would object to the particular method of service utilized").

Accordingly, should service on the Central Authority prove unsuccessful, Canada would not object to alternative means of service. However, the Ninth Circuit requires courts considering whether to authorize service of process by e-mail to consider, in addition to the text of Rule 4, whether (1) the facts and circumstances necessitate court intervention and justify service by e-mail and (2) the plaintiff has demonstrated service by e-mail is reasonably calculated to apprise the defendant of the action and afford him a reasonable opportunity to respond to the complaint. *Newmont USA Ltd. v. Imatech Sys. Cyprus Pty Ltd.*, No. 3:18-cv-00575-HDM-WGC, 2019 WL 3219144, at *2, 4 (D. Nev. July 17, 2019) (granting the plaintiff's motion to serve the defendant via e-mail under Rule 4(f)(3)) (citing *Rio Properties Inc.*, 284 F.3d at 1016). "The authorization of service under Rule 4(f)(3) is neither a last resort nor extraordinary relief and Plaintiff need not have attempted every permissible means of service of process before petitioning the court for alternative relief." *Id.* at *2 (internal quotations omitted).

"Many district courts within the Ninth Circuit have authorized alternative service by e[-]mail on foreign defendants under Rule 4(f)(3) since *Rio*." *See, e.g.*, *Newmont USA Ltd. v. Imatech Sys. Cyprus Pty Ltd.*, No. 318CV00575HDMWGC, 2019 WL 3219144, at *3 (D. Nev. July 17, 2019) (granting a motion to serve a defendant in Cyprus by e-mail); *see also Facebook, Inc. v. Banana Ads, LLC*, No. C-11-3619 YGR, 2012 WL 1038752, at *2 (N.D. Cal. Mar. 27, 2012) (concluding Facebook had "demonstrated that service on the Foreign Defendants via email is not prohibited by international agreement" and granting the motion to serve the foreign defendants, some of which were located in Canada, via e-

mail); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C06-06572 JSW, 2007 WL 1140639, at *1 (N.D. Cal. Apr. 17, 2007) (granting the plaintiff's motion to authorize electronic mail service under Rule 4(f)(3), including on a defendant residing in Canada).

Plaintiffs argue that serving Mr. Kinitz at his publicly listed e-mail address of david.kinitz@mail.utoronto.ca is reasonably likely to provide him with notice of this lawsuit because he lists this address as his e-mail address on his Google Scholar profile as well as in recent articles published articles in 2021. Mot. at 2:25-3:2. Plaintiffs also point out that "[a]ccording to Mr. Kinitz's Twitter account, Mr. Kinitz acknowledges in Twitter posts that he not only reads his regular academic email, but even reads emails in his academic junk/spam folder." *Id.* at 3:4-6. Thus, they argue that they "have also demonstrated that Mr. Kinitz has an active and publicly displayed e[-]mail address and have demonstrated good reason to believe that Mr. Kinitz will receive notice of the lawsuit via that email address." *Id.* at 5:1-3.

Mr. Kinitz's Google Scholar Profile also shows a hyperlink for his "[v]erified email at mail.utoronto.ca." Exhibit 3 to Weisenburger Decl., ECF No. 6-2 at 12. This profile lists as the first article, an article from 2021. *Id.* That article was attached as Exhibit 4 to the Declaration of Robert Weisenburger and shows it was published on January 8, 2021, listed Mr. Kinitz as an author, and states "David J. Kinitz, Email: david.kinitz@mail.utoronto.ca." Exhibit 4 to Weisenburger Decl., ECF No. 6-2 at 14; *see also* Mot. at 2:28-3:2. Additionally, Plaintiffs provided the Court with a print-out from the University of Toronto Journal of Public Health, which show Mr. Kinitz as a member of the Editorial Team and lists his e-mail address on its website as the same e-mail address in the article. Weisenburger Decl., ECF No. 6-2 at 3, ¶ 8; *see also* https://utjph.com/index.php/utjph/about/editorialTeam; Exhibit 5 to Weisenburger Decl., ECF No. 6-2 at 32 (showing various profiles for the editorial team, including a listing for "David J. Kinitz MSW, PhD Student, Contact: david.kinitz@mail.utoronto.ca"); Mot. at 3:2-4. Finally, Plaintiffs provide the Court with Tweets from Mr. Kinitz suggesting he not only reads his e-mails but even checks his spam folder. Mot. at 3:3-6. Plaintiffs provide the Court with various

tweets from a Twitter profile for David J. Kinitz, whose username is @DJKinitz, which includes a Tweet from July 13, 2021, at 8:26 a.m., that says, "Anyone else spend more time reading their junk emails for the accolades than they do their primary inbox that was not from a predatory journal?" Exhibit 6 to Weisenburger Decl., ECF No. 6-2 at 37. This Tweet is still publicly available at https://mobile.twitter.com/DjKinitz.

Thus, the Court concludes that in the event service on the Central Authority proves unsuccessful, (1) the facts and circumstances of this case necessitate Court intervention and justify service by e-mail and (2) service at Mr. Kinitz's e-mail address, david.kinitz@mail.utoronto.ca, is reasonably calculated to apprise Mr. Kinitz with notice of this lawsuit and allow him a reasonably opportunity to respond. *Newmont*, 2019 WL 3219144, at *2, 4.

Finally, Plaintiff's acknowledge that Rule 4 of the Federal Rules of Civil Procedure normally requires a plaintiff to serve a defendant within ninety (90) days of filing the complaint. Fed. R. Civ. P. 4(m). However, "[t]his subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to service of a notice under Rule 71.1(d)(3)(A)," *id.*, and thus, would not apply because Mr. Kinitz is in Canada. Mot. at 5:20-24; *see also Granger*, 2021 WL 4658658, at *3 ("Because delays in effectuating international service 'often occur,' *see* Advisory Committee Notes on the 2016 Amendment to Fed. R. Civ. P. 4, however, the federal rules exempt international service from the ninety-day deadline, *see* Fed. R. Civ. P. 4(m)."). However, "Plaintiffs nevertheless recognize that international service must be effected upon the defendant within a reasonable amount of time after having filed the complaint." Mot. at 5:20-24. Thus, they ask for the Court to grant them ninety (90) days from its order on this Motion to effectuate service of process. *Id.* at 5:24-25. The Court agrees that this is a reasonable time to effectuate service of process and grants the request.

## V.    **CONCLUSION**

Plaintiffs' Motion for an Order Authorizing Service of the Summons and Complaint Defendant David J. Kinitz by e-mail and/or mail is **DENIED-IN-PART** as

follows:

1. Plaintiffs must attempt to serve Mr. Kinitz by serving the Central Authority for Ontario, Canada.

2. If Plaintiffs receive notice that Mr. Kinitz cannot be served through service upon the Central Authority, they shall serve Mr. Kinitz at his publicly listed e-mail address of david.kinitz@mail.utoronto.ca within ten (10) days of this Order, using the "Return Receipt Requested" feature.

3. Any return of service on Mr. Kinitz that Plaintiffs file must include proof that Defendants attempted, at a minimum, to verify actual receipt of the e-mail message.

4. Plaintiffs shall also mail a copy of the Summons, Complaint, and related documents to Mr. Kinitz at the Dalla Lana School of Public Health, University of Toronto, 155 College Street, RM 540, Toronto, Ontario, using certified mail, if possible.

5. Pursuant to Plaintiffs' request, Plaintiffs shall have ninety (90) days from the date of this order to effectuate service of process.

**IT IS SO ORDERED.**

DATED: November 4, 2021

**HON. ROGER T. BENITEZ**
United States District Judge